JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAYLE FLORES, | CASE NO. SA CV 20-00897-DOC-(JDEx) |
| Plaintiff, | |
| vs. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation; and DOES 1 to 10, inclusive, | |
| Defendant. | |

1

## I. INTRODUCTION

A bench trial on this matter was held on June 1, 2021.

This action arises out of a dispute regarding Defendant Life Insurance Company of North America's ("LINA") decision to deny Plaintiff Kayle Flores' ("Plaintiff" or "Ms. Flores") claim for disability benefits. Ms. Flores, a registered nurse, suffers from Cushing's Disease, a disorder that has the potential to cause debilitating symptoms including muscle pain, joint pain, headaches, vertigo, fatigue, lightheadedness, insomnia, brain fog and memory loss. Plaintiff argues that LINA wrongfully denied her claim for short term disability ("STD") benefits, and improperly failed to open and approve a claim for long term disability ("LTD") benefits because her Cushing's Disease and accompanying symptoms made it impossible for her to perform the material duties of her job as a nurse. LINA contends that Plaintiff's medical records contemporaneous to the date she left work provide no explanation for why Plaintiff could not work in her job and that Plaintiff should not receive LTD benefits since she failed to comply with the Policy's proof of loss and cooperation provisions.

The Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

## II. FINDINGS OF FACT

### A. Ms. Flores' Employment and Her Enrollment in the Plan.

1. Ms. Flores began working for St. Joseph Hospital ("St. Joseph") on April 30, 2012. Administrative Record ("AR") 42. At the time she became disabled, she was employed as a registered nurse. *Id*.
2. As a registered nurse, she was responsible for providing collaborative and comprehensive care based on patient and/or family needs. AR 604-05, 941. This

included patient assessment, treatment and care and medication administration. *Id*. Her position required organizational and critical thinking skills, as well as the ability to be quick on one's feet. *Id*. Her job was also physically demanding. *Id*. LINA labeled her occupation as a medium level occupation pursuant to the *Dictionary of Occupational Titles*. AR 623.

3. Ms. Flores enrolled in St. Joseph's employee welfare benefits plan (the "Plan"), which included coverage for short-term disability and long-term disability benefits. AR 28-29. LINA administered STD and LTD benefits provided to Plan participants, including Ms. Flores, by issuing STD policy no. VDT-0980119 (the "STD Policy") and LTD policy no. FLK-980231 (the "LTD Policy") (collectively, "the Policies") to St. Joseph. AR 1035-1061; 1066-1186.

4. The STD Policy states, in pertinent part, that an employee is "Disabled" if solely because of injury or sickness, he or she is (1) unable to perform the material duties of his or her "Regular Job"; and (2) unable to earn 80% or more of his or her indexed earnings from working in his or her "Regular Job." AR 1043.

5. In evaluating the employee's "Regular Job" under the STD Policy, LINA considers the duties of the job as it is normally performed for the employer. AR 1059.

6. The LTD Policy states, in pertinent part, that an employee is "Disabled" if solely because of injury or sickness, he or she is (1) unable to perform the material duties of his or her "Regular Occupation"; and (2) unable to earn 80% or more of his or her indexed earnings from working in his or her "Regular Occupation." AR 1135. After disability benefits have been payable for 24 months, an employee is considered "Disabled" if, solely due to injury or sickness, he or she is (1) unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and (2) unable to earn 60% or more of his or her indexed earnings. *Id*.

7. In evaluating the employee's "Regular Occupation" under the LTD Policy, LINA

1 | will consider the duties of the occupation as it is normally performed in the general labor market in the national economy. AR 1177.

8. The LTD Policy contains a "Successive Periods of Disability" provision that states, in pertinent part:

> A separate period of Disability will be considered continuous: if it results from the same or related causes as a prior Disability for which benefits were payable; and if, after receiving Disability Benefits, the Employee returns to work in his or her Regular Occupation for less than 6 consecutive months[.] . . . For any separate period of disability which is not considered continuous, the Employee must satisfy a new Elimination Period. AR 1166.

9. The LTD Policy contains an elimination period of 180 days, after which benefits become payable. AR 1136. The maximum benefit period for Ms. Flores' claim under the LTD Policy is to age 65. AR 1137.

**B. In 2017, Ms. Flores Withdrew Her Claim for LTD Benefits.**

10. Ms. Flores first stopped working on January 23, 2017. AR 1215. At that time, she had not yet been diagnosed with Cushing's Disease, but was experiencing symptoms of the disease that interfered with her ability to work. AR 258-59, 1208.

11. She remained out of work through August 6, 2017. AR 1199-1200; PLTF 91-94. She was cleared by her doctor to return to work on August 7, 2017, and she did return to work at St. Joseph on that date. *Id*.

12. For the next several months, she continued to experience symptoms, including significant fatigue, headaches and vertigo. AR 256, 262, 258-59. Ultimately, her efforts to return to work failed and she went back out of work on January 28, 2018, less than six months from the August 7, 2017 date that she initially returned to work. AR 41, 1200.

13. In late July 2017, after she had been out of work for nearly six months following her January 23, 2017 initial disability onset date, Ms. Flores received a call from LINA inquiring whether she intended to open up an LTD claim at that time. AR 1208. Plaintiff informed LINA that she would not be pursuing a LTD claim because she

4

intended to return to work. *Id.* LINA, therefore, closed Plaintiff's claim on July 21, 2017. AR 1204.

### C. One Year Later, Ms. Flores Submitted a Claim for STD Benefits.

14. On January 28, 2018, Plaintiff again stopped working. AR 113. Six months later, on July 30, 2018, Plaintiff submitted a claim for STD benefits. *Id.*

15. LINA then conducted an investigation to evaluate whether Plaintiff satisfied the STD Policy's definition of Disability.

16. In light of the STD Policy's definition of Disability, LINA evaluated whether Plaintiff was experiencing a functional impairment, which precluded her from performing the material duties required of a registered nurse as that job is normally performed for her employer. *See* AR 1043 (stating definition of Disability); AR 1059 (setting forth "Regular Job" provision of Policy).

17. As part of its investigation, LINA gathered medical records from Plaintiff's treating primary care physician, Dr. David Daoud, and her treating neurosurgeon, Dr. Robert Louis. AR 556, 562.

### D. Ms. Flores' Inability to Work in Her Own Occupation.

18. In support of her STD claim and at LINA's request, Ms. Flores submitted a Medical Request Form ("MRF") from her primary care physician, Ronald N. Daoud, M.D., dated September 13, 2018, in which he reported Ms. Flores' primary diagnosis as Cushing's Disease and listed her restrictions as being unable to sit or stand due to fatigue and headache. AR 165. He also noted that, even with accommodations, Ms. Flores could not return to work. *Id.*

19. As a result of her disease, Ms. Flores suffers from a variety of symptoms, including severe fatigue, muscle pain, headaches, confusion, vertigo, lightheadedness, depression, anxiety, tachycardia, insomnia, brain fog, difficulty focusing and memory loss. AR 198, 258-59.

20. At a medical appointment on September 25, 2018, Dr. Daoud noted that Ms. Flores

|   |   |   |
|---|---|---|
| 1 |   | continued to suffer from severe symptoms, including jaw cramping, insomnia, |
| 2 |   | excessive fatigue, headaches and inability to lose weight. AR 303. She was unable to |
| 3 |   | carry out her own activities of daily living and spent most of the day in bed |
| 4 |   | secondary to the muscle fatigue and pain. *Id*. His assessments of Ms. Flores included |
| 5 |   | Cushing's Disease, insomnia, generalized anxiety disorder, major depressive order, |
| 6 |   | fatigue, obesity, restless leg syndrome, attention deficit disorder and constipation. *Id*. |
| 7 | 21. | Ms. Flores also submitted a MRF from her neurosurgeon, Robert G. Louis, M.D., |
| 8 |   | dated October 4, 2018, in which he reported that, even with accommodations, Ms. |
| 9 |   | Flores was unable to work because she was recovering from a craniotomy. AR 181. |
| 10 | 22. | On October 15, 2018, Dr. Daoud responded to a letter sent to him by Andrea |
| 11 |   | Dorman, LINA's nurse case manager, regarding Ms. Flores' level of function. AR |
| 12 |   | 252-53. In his response, Dr. Daoud stated that (1) Ms. Flores' restrictions were that |
| 13 |   | she could not sit or stand for more than 15 minutes at a time and she could not |
| 14 |   | concentrate, and (2) the clinical findings included a pituitary tumor. *Id*. He also stated |
| 15 |   | that Ms. Flores experienced excessive fatigue and inability to concentrate and that |
| 16 |   | she might need another surgery. *Id*. He reported that Ms. Flores' diagnostic testing |
| 17 |   | had revealed Cushing's Disease and that her anticipated return-to-work date was |
| 18 |   | January 15, 2019. *Id*. |

**E.  LINA's 2018 Denial of Ms. Flores' STD Claim and Appeal.**

|   |   |   |
|---|---|---|
| 20 | 23. | On October 23, 2018, LINA denied Ms. Flores' STD claim, concluding that the |
| 21 |   | medical information on file did not support her disability. AR 590-93. After a paper |
| 22 |   | review by its in-house nurse clinicians (Nurse Andrea Dorman and Nurse Christine |
| 23 |   | Fletcher), LINA concluded that it was not able to support functional impairment, |
| 24 |   | based on the information it had received. *Id.* |
| 25 | 24. | In its October 23, 2018 denial letter, LINA explained that despite reviewing Dr. |
| 26 |   | Daoud's and Dr. Louis's office appointment notes, these records did not establish |
| 27 |   | that Plaintiff met the STD Policy's definition of Disability. AR 590-92. |

25. On October 26, 2018, Ms. Flores notified LINA that she intended to appeal the decision. AR 596. She also submitted updated medical records from Dr. Daoud in support of her appeal.
26. In considering her appeal, LINA referred her file to another in-house nurse case manager, Rima Aivazian. AR 618-21. Nurse Aivazian concluded, without having examined or spoken to Ms. Flores, that the medical information did not support functional impairment continuously from her initial disability date to the present. AR 620.
27. Based upon the nurse's review and Plaintiff's medical records, on August 19, 2019, LINA upheld its decision on appeal. AR 717-19.

**F. LINA Evaluation for Eligibility for LTD Benefits.**

28. After Plaintiff left work in January 2018, she did not submit a separate LTD claim to LINA.
29. Though LINA offered to evaluate whether Plaintiff was entitled to LTD benefits, Plaintiff declined to allow LINA to consider her claim. Declaration of Cindy Rucker (Dkt. 45-1) ("Rucker Decl."), Exs. 1 and 2.
30. As a result, LINA did not render a decision on whether Plaintiff was entitled to benefits under the LTD policy.

## III. CONCLUSIONS OF LAW

After consideration of the parties' trial briefs, the Court makes the following conclusions of law:

31. Any conclusion under this category that is a finding of fact is also hereby adopted as a finding of fact.
32. This case is governed by the Employee Retirement Income Security Act, 29 U.S.C. Section 1001, et seq. ("ERISA") because it involves an employee welfare benefit

plan within the meaning of that statute.

**A. Ms. Flores is Entitled to Short Term Disability Benefits.**

33. In making the above Findings of Fact and the foregoing Conclusions of Law, the Court employed a "de novo" standard of judicial review, per the parties' stipulation (Docket No. 23 at 3:3-5), and conducted an independent and thorough inspection of the Administrative Record without affording any deference to the plan administrator's findings. *Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 728 (9th Cir. 2006).

34. As required on a de novo review, the Court freshly evaluated whether Ms. Flores is disabled within the terms of the Policies and decided which parties' conflicting evidence is more likely to be true. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc). In this case, LINA's reasons for denying Ms. Flores' claim were based on "paper reviews" of her medical records by nurse reviewers. The Court finds the opinion of Ms. Flores' attending physicians more reliable and credible than the opinion of the nurse reviewers who only conducted paper reviews of her medical records.

35. On de novo review, the Court finds that LINA issued an improper denial, and the weight of the evidence supports a finding of disability under the STD Policy. Ms. Flores and her attending physicians demonstrated that she is unable to perform the material duties necessary to pursue her own usual occupation in the usual and customary way. She is therefore entitled to benefits under the STD Policy.

36. LINA's decision to deny Ms. Flores' claim for STD benefits was incorrect because LINA selectively reviewed Ms. Flores' medical records by improperly relying on less credible "paper reviews" by nurse consultants (*see, e.g.*, *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 635-636 (9th Cir. 2009), when other more qualified attending physicians, including a board-certified medical doctor who had treated Ms.

Flores regularly for years, each repeatedly concluded she was disabled based on their examination findings of and discussions with Ms. Flores.

**B. Ms. Flores' Failure to Provide Proof of Loss Defeats Her Claim for Long Term Disability Benefits.**

37. Plaintiff is not entitled to LTD benefits because she failed to comply with the LTD Policy's Proof of Loss provision.

38. The LTD Policy contains an unambiguous requirement to provide timely proof of loss. AR 1170. Plaintiff concedes that she did not comply with its provisions. Plaintiff Kayle Flores' Responding Trial Brief (Dkt. 47) at 15.

39. The Ninth Circuit has recognized that compliance with an unambiguous proof of loss provision is a condition precedent to payment of benefits. *See Cisneros v. Unum Life. Ins. Co. of Am.*, 134 F.3d 939 (9th Cir. 1998). In *Cisneros*, the policy provided that proof "may not be given" after one year and 180 days; another section provided that benefits would be paid "when the company receives proof." *Id*. at 943. The Ninth Circuit found this language to "logically and unambiguously establish that, under the [p]olicy, timely submission of proof [wa]s a condition precedent to payment of benefits." *Id*.

40. LINA has also been prejudiced by Plaintiff's failure to comply with the proof of loss requirement. The notice-prejudice rule prevents an insurance company from avoiding liability on the basis of untimely notice or submission of proof unless the company proves it has been substantially prejudiced by the delay. *Cisneros*, 134 F.3d at 944.

41. "To establish prejudice, the 'insurer must show it lost something that would have changed the handling of the underlying claim.'" *Lat v. Farmers New World Life Ins. Co.*, 239 Cal. Rptr. 3d 796, 801 (Cal. App. 2018), as modified on denial of reh'g (Nov. 15, 2018) (citations omitted). Here, LINA has been prejudiced in multiple respects. Plaintiff's failure to provide notice and proof of loss impaired LINA's

ability to investigate her LTD claim. Indeed, LINA has not received an opportunity to evaluate her LTD claim. When LINA attempted to evaluate Plaintiff's claim, her counsel declined and stated that Plaintiff would pursue benefits through litigation. Rucker Decl., Exs. 1 and 2.2. This impeded and prejudiced LINA's evaluation of Plaintiff's claim. LINA also had a contractual right to have a claimant physically examined in order to evaluate the claimant's physical condition. AR 1171. LINA lost that right entirely due to Plaintiff's refusal to submit a claim. Similarly, LINA has not been able to investigate whether Plaintiff submitted other disability claims, such as to the Social Security Administration ("SSA"), or to assess whether those claims have been denied based on a reason material to LINA's disability analysis.

42. In limited circumstances, the Ninth Circuit recognizes a futility exception to the requirement that an ERISA plaintiff exhaust her administrative remedies prior to filing a claim in federal court. *Amato v. Bernard*, 618 F.2d 559, 566-68 (9th Cir. 1980). For this narrow exception to apply, a plaintiff must establish why the administrative process would have been futile. *See Perkins v. Prudential Ins. Co. of Am.*, 417 F. Supp. 2d 1149, 1153 (C.D. Cal. 2006) (holding that resorting to administrative remedies would have been futile where administrator failed to respond to claimant's appeal request prior to litigation and "consistently refused to pay [claimant's] benefits until sued"); *see also Goodes v. Pac. Gas & Elec. Co.*, No. C 12-1667, 2012 WL 4944090, at *3 (N.D. Cal. Oct. 17, 2012) (denying motion to dismiss on exhaustion grounds where the plaintiffs alleged that they submitted " 'hundreds' of letters regarding the benefits determination, that the available Claims and Appeals Procedure 'was never followed,' " and that the defendants "promised a review that apparently never came").

43. Bare assertions of futility or unsupported allegations will not sustain the futility exception. *Grenell v. UPS Health & Welfare Package*, 390 F. Supp. 2d 932, 935 (C.D. Cal. 2005) ("[U]nsupported allegations of futility will not sustain the futility

exception to the exhaustion requirement.").

44. In *Grenell*, the court rejected conclusory allegations that "all [claimant's] further efforts would have been futile" and "any attempt by [claimant] to file further appeals, or to perfect additional or new claims would have met with the same result." *Id*. Similar to the claimant in *Grenell*, Plaintiff offers no reason for her failure to open a LTD claim. Instead, Plaintiff argues that she was not obligated to pursue a LTD claim because the claim would have been futile. However, Plaintiff has failed to show why the administrative review procedure would be futile. Plaintiff cannot merely assert that her claim would have met the same result. Such assertion is insufficient to trigger the exception.

45. In addition, LINA's adverse decision on Plaintiff's STD claim was made on a different insurance policy from Plaintiff's LTD claim, with a different insuring agreement, a different definition of disability, and under a contract that provided distinct benefits for a different period of time.

46. Because Plaintiff never made a claim under the LTD Policy, LINA did not have an opportunity to conduct a vocational review, secure updated medical records, evaluate potential offsets, or determine whether Plaintiff is receiving income from another source, which may be indicative of an ability to work. Thus, critical issues remain uninvestigated because LINA was unable to investigate Plaintiff's LTD claim.

47. The policy goals of the exhaustion requirement such as "the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise," *Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995), are also better served by requiring exhaustion given the facts of this case. Allowing Plaintiff to pursue an LTD claim in this forum, without using the administrative process, would require the Court to make a decision on an incomplete record. Accordingly, the Court

determines that the futility exception does not apply.

48. Finally, the LTD Policy's Successive Disability provision does not provide a basis for awarding LTD benefits in this case.

49. The Successive Disability provision requires that Plaintiff actually received benefits in 2017. AR 1166. Plaintiff did not receive benefits in 2017 due to Plaintiff's withdrawal of her LTD claim. As a result, the terms of the successive disability provision are not met, and this provision does not provide a basis for an award of LTD benefits.

## IV. CONCLUSION

After considering the parties' arguments, trial briefs, response briefs, and supplemental briefs, for the reasons explained above and based on the totality of the evidence in the Administrative Record, the Court holds that Plaintiff is disabled under the terms of the short-term disability policy. However, Plaintiff has failed to prove by a preponderance of the evidence that she is entitled to benefits under the long-term disability policy. Accordingly, this Court awards Ms. Flores benefits through the "own occupation" period and remands the case back to LINA for further evaluation regarding whether she was disabled under the "any occupation" standard for long term disability claims.

DATED: July 29, 2021

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE